UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL GREGORY,                                        :

                       Petitioner,            :        **<u>MEMORANDUM DECISION</u>**

            - v -                             :        19-CV-05432 (DC)

RAY COVENY, Superintendent of Elmira          :
Correctional Facility,

                              :

                  Respondent.

                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:        JUSTIN C. BONUS, Esq.
                        118-35 Queens Blvd., Suite 400
                        Forest Hills, NY 11375
                            Attorney for Petitioner

                        ERIC GONZALEZ, Esq.
                        District Attorney, Kings County
                        By:    Leonard Joblove, Esq.
                                Avshalom Yotam, Esq.
                                  Assistant District Attorneys
                        350 Jay Street
                        Brooklyn, NY 11201
                            Attorney for Respondent

CHIN, Circuit Judge:

        In 2014, following a jury trial, petitioner Paul Gregory was convicted in

the Supreme Court of the State of New York, Kings County (Firetog, *J.*), of second-

degree murder, second-degree attempted murder, and second-degree criminal

possession of a weapon.  Gregory was sentenced to a term of imprisonment of twenty-

five years to life.  His convictions were affirmed by the Appellate Division, Second

Department, *People v. Gregory*, 75 N.Y.S.3d 225 (2d Dep't 2018) ("*Gregory I*"), and the

New York Court of Appeals denied his application for leave to appeal, *People v. Gregory*,

108 N.E.3d 504 (N.Y. 2018) (Stein, J.) ("*Gregory II*").

On September 24, 2019, Gregory filed a counseled petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  *See* Dkt. 1.  After successfully moving to

stay the petition and exhausting his state remedies, Gregory filed an amended petition

on January 21, 2022 (the "Petition").  *See* Dkt. 12.  Gregory argues that (1) new evidence

in the form of sworn statements from alibi witnesses and a report from an identification

expert establish his actual innocence, (2) trial counsel rendered ineffective assistance,

and (3) he was denied the right to participate in the jury selection process and thus

denied a fair trial.  *See* Dkt. 14 at 2.[1]  The Kings County District Attorney's Office filed its

opposition to the Petition on May 25, 2022.  *See* Dkt. 17.  On May 11, 2023, the case was

reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

### I.  *The Facts*

The evidence at trial established the following:

---

[1]      The Petition also includes a request for an evidentiary hearing.  *See* Dkt. 14 at 26-27.  For
the reasons set forth below, the request is denied because Gregory's claims are without merit.

2

On June 5, 2012, at about 3:15 a.m., Winston Small and James Brown were ordering food from the exterior take-out window of a 24-hour bodega in East New York, Brooklyn.  *See* Dkt. 15-3 at 92-93; Dkt. 14 at 17.  While they waited, a man and a woman approached them, and the man yelled out that Small and Brown had insulted his female companion.  *See* Dkt. 15-3 at 97, 101-02; Dkt. 14 at 17.  The man took out a gun and fired several shots at Small and Brown.  *See* Dkt. 15-3 at 103-05; Dkt. 14 at 18.  Small and Brown ducked inside the bodega until they saw the shooter walk away, at which point they ran down a different street.  *See* Dkt. 15-3 at 106-07.

While they were running, Brown clutched his side and collapsed on the sidewalk, at which point Small realized that they had both been shot.  *See* Dkt. 15-3 at 107.  Small called 9-1-1.  *See id.*  When a police officer arrived at the scene, Small provided a description of the shooter as a young man in his twenties with a dark complexion.  *See id.* at 109-10; Dkt. 14 at 18.  Both men were then taken to Brookdale Hospital.  *See* Dkt. 15-3 at 108-09.  Small suffered bullet wounds to his thigh and survived, but Brown died at the hospital.  *See* Dkt. 14 at 18.  Four shell casings were found at the scene.  Dkt. 15-3 at 31.

Gregory was not immediately arrested.  On June 23, 2012, the 75th Precinct in Brooklyn received an anonymous call regarding the June 5 shooting.  Dkt. 14 at 14.  The caller stated that "Peezy" and "Peaches" were responsible for the shooting, and the precinct officers connected the nicknames to Paul Gregory and Juanita Chirse,

3

respectively, based on past familiarity.  *See id;* Dkt. 15-1 at 8.[2]  On August 17, 2012, Small

was summoned to the precinct and Detective Anthony Amorese conducted a photo

array identification procedure that included an image of Gregory.  Small picked out

Gregory from the photos and identified him as the shooter but said that he did not

recognize Chirse's photo.  *See* Dkt. 14 at 14; Dkt. 14-1 at 142.

    On October 2, 2012, during an interview at the precinct, Small explained

that while he was "able to see" the shooter's face, he "wasn't able to like have a solid

image of his face" because he "was caught off guard" and "was really in shock."  Dkt. 14

at 13.  On October 3, 2012, police detectives spoke to Chirse, who denied knowledge of

the shooting and said that she did not know Gregory.  *See* Dkt. 14 at 15.

---

[2] The record is unclear as to why the officers had prior familiarity with these nicknames and how the detectives connected them to Gregory and Chirse.  Though the detectives were not questioned about this at trial, the prosecutor and Detective Anthony Amorese engaged in the following exchange during the *Wade* hearing:

  Q:  In your work as a 75th detective, had you come across an individual with the nickname Peezy before?  A:  Yes, I did.

  ….

  Q:  And you were familiar with the person named Peezy?  A:  Yes, I was.

  Q:  And did you have an actual name connected to the nickname Peezy?  A:  Yes, we did.

  Q:  Who was that?  A:  Paul Gregory.

Dkt. 15-1 at 7-8.

  Detective Amorese did not provide further testimony about how he connected the nicknames.  *See id.*  At the end of the hearing, the court stated in its findings of fact that a photo array with Gregory's photo was prepared "based upon some crime stopper information."  *See id.* at 44.

On October 4, 2012, Detective Amorese and a colleague conducted a lineup for Small at the precinct.  *See* Dkt. 15-3 at 112, 143; Dkt. 15-4 at 55; Dkt. 14 at 15. The lineup included six people, with Gregory in the third position.  *See* Dkt. 14 at 15. Small positively identified Gregory as the shooter.  *See id.*

## II.   *Procedural History*

### A.   *State Court Proceedings*

Gregory was indicted in Kings County for murder in the second degree, attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree.  *See* Dkt. 17 at 2.  During the grand jury proceedings, Gregory testified that he was at Shakera White's house with his girlfriend, Sharice O'Garra, on the night of the murder, where they drank alcohol and played cards until becoming intoxicated and falling asleep around 12:30 to 1:00 a.m.  *See* Dkt. 14-1 at 194-95.

On September 18, 2014, the court held a *Wade* hearing regarding the pretrial identification procedures, focusing on whether the lineup at which Small identified Gregory as the shooter was suggestive.  *See* Dkt. 15-1.  Gregory argued that the lineup was suggestive because Detective Amorese, who had conducted the photo array, was also present at the lineup and was likely visible to Small.  *See id.* at 39-42. Gregory asserted that the natural inference was that Detective Amorese had arrested the person Small had identified in the photo array and had then brought Small back to

the precinct for the purpose of identifying the shooter in person. *See id.* at 41.  During

the hearing, Detective Amorese also testified about how he had connected the "Peezy"

nickname to Gregory. *See id.* at 8.  At the end of the hearing, the court denied Gregory's

motion to suppress Small's identification, holding that the line-up process was not

suggestive and that there was no likelihood that Small misidentified Gregory. *See id.* at

46.

Trial commenced on September 22, 2014. *See* Dkt. 15-2 at 2; Dkt. 17 at 3.

During jury selection, the court first addressed the prospective jurors in the courtroom

before any were called to the jury box for formal *voir dire*.  The court asked whether the

prospective jurors could accept the presumption of innocence and the prosecution's

burden to prove the charged crimes beyond a reasonable doubt, and the prospective

jurors confirmed that they could.  Dkt. 17-1 at 18.  Twenty prospective jurors were

called to the jury box, and the court and counsel for both parties questioned them.  Four

jurors were selected in this first round of *voir dire*.  At the start of the second round of

*voir dire,* before calling additional prospective jurors into the jury box, the court asked

the remaining prospective jurors in the courtroom whether they could be fair and

impartial.  *See* Dkt. 15-2 at 64-65; Dkt. 15-7 at 386.  Those prospective jurors who

answered in the negative (identified in the record as "a few") were dismissed.  *See* Dkt.

15-2 at 64-65.

In the People's case, the prosecution called Brown's sister, the two officers and the EMT who had responded to the scene, Small, and Detective Amorese.

Small testified about the lineup procedure and identified Gregory in court, saying that he was "[a] hundred percent sure" he was the man who had shot him. Dkt. 15-3 at 110.  As for the lineup, Small testified that when the officers asked if he recognized anyone, he answered, "Yes, I do."  *See id*. at 114.  The transcript shows that Small then testified that the officers "asked [him] what number, did I think it was number three," and that Small responded, "[y]eah, number three."  *Id*.  He later testified that he recognized Gregory "instantly."  *Id*. at 114-15.  Detective Amorese also spoke about the lineup and described how it was assembled and conducted.  Dkt. 15-4 at 36-37, 44-51.

On October 1, 2014, the jury found Gregory guilty of second-degree murder, second-degree attempted murder, and second-degree criminal possession of a weapon.  *See* Dkt. 15-4 at 206-08; Dkt. 17 at 3.[3]

On October 10, 2014, Gregory moved to set aside the verdict pursuant to Section 330.30 of New York's Criminal Procedure Law.  *See* Dkt. 15-5.  His principal argument was that the lineup procedure was unduly suggestive because Small had

---

[3]     The court instructed the jury to skip the second-degree assault charge if it found Gregory guilty of second-degree attempted murder.  *See* Dkt. 15-4 at 188-89.

testified that the officers had asked him whether the person he recognized was "number three." Dkt. 17 at 3-4; Dkt. 15-5 at 5.

On November 5, 2014, prior to sentencing, the court held a hearing on the § 330.30 motion and recalled Small to clarify his testimony. Gregory's counsel objected to recalling Small, arguing that doing so would amount to a revision of Small's trial testimony; counsel alternatively requested that the court also call the court reporter to testify to the transcript's accuracy. *See* Dkt. 15-5 at 22; Dkt. 17 at 4. The court granted the request and both Small and the court reporter, Donalda Adams, were called.

Small testified first and spoke again about the lineup procedure, but this time clarified that none of the officers had asked him whether he recognized the person in the third position. Dkt. 15-5 at 33-35.[4] He denied that he had testified to this at trial, saying that it must have been a stenographer's error. *Id*. at 35-38. Adams then testified to the accuracy of the trial transcript and asserted that she had not erred in recording

---

[4]     The following exchange occurred on direct examination of Small:
Q: At any point before you viewed the lineup, did anybody tell you that there was somebody specific that you were supposed to pick out? A: No, never.
Q: When -- Did you at any point say that, yes, I recognize someone? A: Yes, I did.
. . .
Q: . . . You first said what? You looked in the window and what did you say? A: I looked into the window, I was asked if I recognize anybody I said yes, I do.
Q: Okay. Then, what did they say? A: They asked me what number.
Q: What did you say? A: I said number three.
Q: Did they ever tell you it [was] number three? A: No, never.
. . .
Q: Did you ever say at trial that . . . one of the detective said to you, was it number three? A: No, I didn't say that.
Dkt. 15-5 at 33-35.

Small's testimony.  *Id*. at 49-51.  Both Small and Adams also testified that Small had

spoken with a stutter while on the stand.  *Id*. at 41, 47.  After hearing argument, the

court denied Gregory's motion, holding that although the trial transcript reflected what

the court reporter had heard, setting aside the verdict was not required as a matter of

law.  *See* Dkt. 17 at 5; Dkt. 15-5 at 69.  After a brief pause in the hearing, the court

sentenced Gregory to twenty-five years' to life imprisonment on the murder count, to

run concurrently with sentences of twenty-five years and fifteen years on the other

counts.  *See* Dkt. 15-5 at 56, 66; Dkt. 17 at 5.

       Represented by new counsel, Gregory appealed his convictions to the

Appellate Division, Second Department, on the ground that he was denied a fair trial

because the judge allowed potential jurors to opt out of the jury pool based on their

inability to serve impartially.  *See* Dkt. 15-6 at 5, 14.  Gregory later filed a *pro se*

supplemental brief in which he alleged that the police lacked probable cause to arrest

him, the verdict was against the weight of the evidence, and he was denied effective

assistance of counsel.  *See* Dkt. 15-6 at 67-98; Dkt. 17 at 6-7.

       On April 18, 2018, the Appellate Division affirmed Gregory's convictions.

*See Gregory I,* 75 N.Y.S.3d 225 at 894.  The Appellate Division held that arguments

regarding the jury selection and photo lineup process were unpreserved for appellate

review and failed on the merits.  *See id.*  The Appellate Division further determined that,

upon review of the record, the guilty verdict was not against the weight of evidence and

that Gregory's ineffective counsel claim was without merit.  *See id.*  The Court of

Appeals denied leave to appeal on July 23, 2018.  *See Gregory II,* 108 N.E.3d at 504.

### B.  Proceedings Below

On January 10, 2019, Gregory filed a *pro se* habeas petition.  *See* Petition for

Writ of Habeas Corpus, *Gregory v. Elmira Correctional Facility,* No. 19-cv-291, Dkt. 1

(E.D.N.Y. Jan. 10, 2019).  Gregory raised claims alleging ineffective assistance of counsel,

improper jury selection proceedings, and improper revision of Small's testimony.  *See id*.

As the petition included exhausted and unexhausted claims, Gregory moved to stay the

petition while he exhausted his state remedies, and this Court denied the motion.  *See*

Order at 1, *Gregory v. Elmira Correctional Facility*, No. 19-cv-291, Dkt. 10 (E.D.N.Y. Apr.

24, 2019).  On August 7, 2019, this Court dismissed the petition without prejudice to

renewal.  *See* Memorandum and Order at 2, *Gregory v. Elmira Correctional Facility*, No.

19-cv-291, Dkt. 11 (E.D.N.Y. Aug. 7, 2019).

On September 24, 2019, with the assistance of counsel, Gregory filed a

renewed habeas petition pursuant to § 2254 and included a motion for a stay to exhaust

state remedies.  *See* Dkt. 1.  In the renewed petition, Gregory raised fair trial, new

evidence, ineffective assistance of trial counsel, and *Youngblood* violation claims.  *See*

Dkt. 1.  This Court granted the motion for a stay on December 10, 2019.  *See* Dkt. 17 at 8.

On September 25, 2020, Gregory filed in the Supreme Court, Kings

County, a motion to vacate the judgment of conviction, pursuant to Section 440.10 of

New York's Criminal Procedure Law. *See* Dkt. 15-7 at 2-4. Gregory also sought an order directing the government to produce evidence for forensic testing pursuant to Section 440.30(1-a) of New York's Criminal Procedure Law. *See id.* Gregory raised claims asserting actual innocence, newly discovered evidence, ineffective assistance of trial counsel, violations of *Brady* and *Rosario,* and due process violations. *See id.* at 3-4. On October 8, 2021, the court denied the motion. *See* Dkt. 15-7 at 617. On December 20, 2021, Gregory applied to the Appellate Division, Second Department, for an order granting a certificate to appeal the denial of the motion to vacate. *See* Dkt. 15-7 at 632. On December 29, 2021, the Appellate Division denied the application. *See* Dkt. 15-7 at 662.

After exhausting his state remedies, Gregory filed the Petition on January 21, 2022, alleging that (1) new evidence in the form of sworn statements from alibi witnesses and a report from an identification expert establish his actual innocence; (2) trial counsel rendered ineffective assistance; and (3) he was denied the right to participate in the jury selection process and thus denied a fair trial. *See* Dkt. 12 at 2-3; Dkt. 14 at 2.[5] His claims of ineffective assistance and denial of a right to a fair trial were raised on direct appeal and his actual innocence claim was raised in his motion to vacate.

---

[5]      Though the Petition itself appears to contain more than three grounds, *see* Dkt. 12 at 2-3, this decision follows the organizational structure of the memorandum that accompanies the Petition, *see* Dkt. 14 at 2.

In a memorandum filed in support of his Petition, Gregory presented a report by an identification expert, Dr. Michael Leippe, which concluded that "a conviction based on the eyewitness evidence alone was not called for."  Dkt. 14 at 8, 67; Dkt. 14-1 at 6.  Gregory also attached sworn statements from two alibi witnesses, White and O'Garra, stating that they were together with Gregory at White's apartment on the night of the shooting.  *See* Dkt. 14-1 at 243-47.

Respondent filed an opposition to the Petition on May 25, 2022, and Gregory replied on July 12, 2022.  *See* Dkt. 17, 19.  On May 11, 2023, the case was reassigned to the undersigned.

## *DISCUSSION*

## I.   *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was

'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting

*Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per

curiam).

Federal courts generally do not review state court rulings that "rest

primarily on state procedural law."  *Murden v. Artuz*, 498 F.3d 178, 191-92 (2d Cir. 2007).

The Second Circuit has "held repeatedly that the contemporaneous objection rule" --

which bars state appellate courts from reviewing arguments presented for the first time

on appeal pursuant to N.Y. Crim. Proc. Law § 470.05(2) -- "is a firmly established and

regularly followed New York procedural rule."  *Downs v. Lape*, 657 F.3d 97, 103-04 (2d

Cir. 2011) (citations omitted).  Hence, the Second Circuit has affirmed the denial of

habeas relief based on a state court's ruling that the failure of a petitioner to object at a

trial rendered a claim unpreserved for appellate review.  *See, e.g., Garcia v. Lewis*, 188

F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial

counsel failed to bring to trial court's attention a claim that he later attempted to

advance on appeal).

If a claim is procedurally barred pursuant to an independent and

adequate state rule, a federal habeas court may not review it on the merits unless the

petitioner demonstrates (1) "cause for the default and actual prejudice as a result of the

alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Cause may be demonstrated where the factual or legal basis for a claim was unavailable, outside interference by officials made compliance impracticable, or the procedural default resulted from ineffective assistance of counsel. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice can be demonstrated by showing "that the errors worked to [the defendant's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (citation and internal quotation marks omitted).

In the event of a fundamental miscarriage of justice, "'where a constitutional violation has probably resulted in the conviction of one who is actually innocent,' the [Supreme] Court has recognized that 'a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.'" *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Murray*, 477 U.S. at 496). "To establish actual innocence, petitioner must demonstrate that 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

A defendant may assert the existence of newly discovered evidence only where there is "evidence which could not reasonably have been presented" earlier in the proceeding. *Townsend v. Sain*, 372 U.S. 293, 317 (1963), *overruled on other grounds by*

14

*Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Further, a claim of actual innocence on the basis of newly discovered evidence cannot be grounds for federal habeas relief absent a showing of an independent constitutional violation.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (citing *Townsend*, 372 U.S. at 317); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (stating that the Supreme Court has not yet resolved "whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").  Federal courts review habeas claims for constitutional violations, not for errors of fact.  *See Herrera*, 506 U.S. at 400.

In rare cases, a court may hear a petitioner's constitutional claim despite a procedural bar when the constitutional claim is accompanied by a claim of actual innocence.  *See Rivas v. Fisher*, 687 F.3d 514, 540 (2d Cir. 2012).  Thus, the assertion of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"  *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (quoting *Herrera*, 506 U.S. at 404).   To make a gateway showing of actual innocence, a defendant must show that a constitutional violation has probably resulted in the conviction of an innocent person, and that it is more likely than not no reasonable jury would convict the defendant in light of the new evidence.  *Id.* at 327.  Absent a constitutional claim, courts in this district have declined to grant habeas relief on the grounds of actual innocence.

*See, e.g.*, *Maldonado v. Warden, Adirondack Corr. Facility*, No. 17-cv-6368, 2019 WL 3321746, at *8-9 (E.D.N.Y. Jul. 23, 2019).

## II.   *Analysis*

Gregory raises three claims in the Petition:  (1) actual innocence based on alibi witness statements and a report from an identification expert, (2) ineffective assistance of trial counsel, and (3) a denial of a fair trial when the court dismissed potential jurors.  *See* Dkt. 12.  I address each claim in turn.

### A.   *Actual Innocence Claim*

Gregory claims that new evidence in the form of sworn alibi witness statements and a report from an identification expert establish his actual innocence.  *See* Dkt. 14 at 19.  In the report, Dr. Michael Leippe concludes that "a conviction based on the eyewitness evidence alone was not called for."  Dkt. 14-1 at 79.  Gregory argues that this report, in combination with other evidence on which defense counsel failed to rely, such as the alibi witnesses and Small's failure to identify "Peaches," establishes his innocence.  *See* Dkt. 14 at 21.

When Gregory raised the same claims in his § 440.10 motion, the Kings County Supreme Court denied the motion on the ground that Gregory could have brought the evidence forward at trial and he thus failed to meet the standard for newly discovered evidence.  *See* Dkt. 15-7 at 624.  The court also found that Gregory's evidence was "at best impeaching or contradicting of the other evidence," *id.* at 625, and that

Gregory did not meet the requirement of demonstrating that "had such evidence been received at the trial[,] the verdict would have been more favorable to the defendant," *id.* (quoting C.P.L. § 440(1)(g)).   Finally, the court held that the alibi evidence and the expert identification report did not establish Gregory's actual innocence.  *See* Dkt. 15-7 at 622-23.

The court's merits determination is entitled to "substantial deference." *Fischer*, 780 F.3d at 560, and the decision is not "so lacking in justification that there was [no] possibility for fairminded disagreement," *Vega*, 669 F.3d at 126.  Indeed, in my view the trial court correctly determined that Gregory failed both to establish a claim of actual innocence and to meet the standard for newly discovered evidence.

As a threshold matter, both an identification expert and the alibi witnesses could "reasonably have been presented" during trial and do not constitute newly discovered evidence.  *Townsend*, 372 U.S. at 317.  Gregory mentioned the alibi witnesses during his grand jury testimony and there is no evidence that counsel was prevented or otherwise unable from pursuing either White or O'Garra's testimony.  *See* Dkt. 14-1 at 194-195.

Moreover, the alibi evidence does not clearly demonstrate Gregory's innocence.  First, the alibi statements are inconsistent with each other.  In her affidavit, White states that she, O'Garra, and Gregory were at her apartment on June 4 and that Gregory walked O'Garra home at around 8:30 a.m. on June 5.  *See* Dkt. 14-1 at 243.  But

17

O'Garra claims in her affidavit that she left White's house at around 4:00 a.m. and did not return. *See id.* at 246. Second, these statements do not foreclose the possibility that Gregory perpetrated the shooting, as the bodega was located only half a mile from White's apartment. *See* Dkt. 14-1 at 243-47; Dkt. 15-7 at 622-23. It is possible that Gregory left the apartment at some point in the evening, committed the shooting, and thereafter returned to the apartment, after which he left again in the morning. Indeed, White states that she sent Gregory and O'Garra to buy liquor in the evening, which is consistent with Small's testimony that Gregory was accompanied by a female companion when he approached Small and Brown. *See* Dkt. 15-7 at 622. Similarly, the expert report does not demonstrate Gregory's innocence but only arguably raises some doubt as to his guilt. Taken together, the alibi statements and expert identification report do not demonstrate Gregory's actual innocence.

Finally, Gregory does not assert that the actual innocence claim is a "gateway" for him to avoid a procedural default. *See Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004). He does not connect a constitutional violation to his actual innocence claim to make a gateway showing. *See Schlup*, 513 U.S. at 315. Additionally, the evidence fails to establish that, more likely than not, a reasonable jury would not have convicted Gregory had it been presented with the alibi witness testimony or the expert report. *See id.* at 327.

Accordingly, Gregory is not entitled to habeas relief on this claim.

18

**B.    *Ineffective Assistance of Trial Counsel Claim***

Nor is Gregory entitled to habeas relief for his ineffective assistance of trial

counsel claim, as the claim is both procedurally barred and fails on the merits.

To prevail on a claim of ineffective assistance under federal law, a

petitioner must (1) show that counsel's performance was so deficient as to fall below "an

objective standard of reasonableness"; and (2) establish prejudice by demonstrating a

"reasonable possibility" that, "but for counsel's unprofessional errors, the result of the

proceeding would be different." *Strickland v. Washington*, 466 U.S. 688, 694 (1984).

Under *Strickland*, there is a strong presumption that counsel's choice to focus on some

issues rather than others is tactical. *See, e.g., Bell v. Cone*, 535 U.S. 685, 699-701 (2002).

"The standards created by *Strickland* and § 2254 are both highly

deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562

U.S. at 105 (citations and internal quotation marks omitted).  The standard to establish

an ineffective assistance of counsel claim under New York law, however, is lower than

that under federal law.  *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y. 2017).   In New

York, a defendant must show only "that counsel failed to provide meaningful

representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing *People v. Stultz*,

810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)).  Unlike the

federal standard, *see Strickland*, 466 U.S. at 694, the defendant is not required to

demonstrate that he was prejudiced by the ineffective assistance, *see Alvarez*, 125 N.E.3d at 120.

Gregory claims that he received ineffective assistance of trial counsel because his counsel failed to call an identification expert to challenge Small's identification and failed to call O'Garra and White as alibi witnesses.  *See* Dkt. 14 at 23. Gregory argues that an identification expert could have informed the jury about suggestive identification procedures and warned the jurors that Small did not positively identify Gregory during the lineup.  *See id.* at 28.  Together with counsel's failure to follow up on the alibi witnesses and failure to attempt to impeach Small as an unreliable witness, Gregory argues that, if not for counsel's errors, there is a reasonable possibility that the verdict would have been different.  *See id.* at 23.  Respondent argues that Gregory's claim is procedurally barred because the trial court rejected the claim as both procedurally barred and meritless, and that the claim also fails on the merits under *Strickland*.  *See* Dkt. 17-1 at 11.

Gregory first raised an ineffective assistance claim in a *pro se* supplemental brief on direct appeal focusing on counsel's failure to further challenge the identification procedure.  *See* Dkt. 15-6 at 68.  The Appellate Division determined that the ineffective assistance of counsel contention was without merit under both state and federal standards.  *See Gregory I*, 75 N.Y.S.3d at 895.  Citing *Strickland*, the Appellate Division found that Gregory failed to show that the decision to not present certain evidence "had

any reasonable probability of affecting the outcome." *Id.* When Gregory raised the

claim again in his § 440.10 motion, the Kings County Supreme Court held that it was

procedurally barred because it was previously rejected on the merits on direct appeal

and that it was, in any event, meritless. *See* Dkt. 15-7 at 626.

On habeas review, Gregory's ineffective counsel claim is first procedurally

barred because the Kings County Supreme Court dismissed the claim on state

procedural grounds. *See Murden*, 498 F.3d at 191-92 (holding that federal courts cannot

review state court rulings that rest primarily on state procedural grounds). Although

the procedural bar may be overcome where the petitioner demonstrates (1) cause for the

default and actual prejudice or (2) a fundamental miscarriage of justice, *see Coleman*, 501

U.S. at 750, Gregory has failed to argue either ground. Moreover, the district court's

merits determination is entitled to substantial deference. *See Fischer*, 780 F.3d at 560.

Even without the deference afforded to the state court's merits

determination, Gregory's claim also fails on an independent merits analysis. Under

*Strickland*, Gregory must show that counsel's performance fell below "an objective

standard of reasonableness" and that there is a "reasonable possibility" that the result of

the proceeding would be different "but for counsel's unprofessional errors." *Strickland*,

466 U.S. at 694. Gregory has failed to satisfy this standard. First, the record shows that

the trial court allowed significant opportunity for counsel to challenge Small's

identification. Although there are some concerns with Small's identification -- for

21

example, the four-month lapse between the shooting and the lineup, Small's statement

that he was not able to "have a solid image of [the shooter's] face" because he was in

shock, and the fact that Small's testimony alone connects Gregory to the events --

Gregory's counsel questioned Small and Detective Amorese extensively about the

identification procedures during the *Wade* hearing, at trial, and during the hearing on

the § 330.30 motion.  *See* Dkt. 15-1 at 20-30; Dkt. 15-3 at 143-48; Dkt. 15-4 at 44-51; Dkt.

15-5 at 31-34.  The purported problems with the identification were presented to the

jury, and the jury was not persuaded.

Second, Gregory has not shown that counsel's failure to present the alibi

witnesses at trial was a failure of representation rather than a strategic decision.  Given

the inconsistencies between White and O'Garra's statements, trial counsel may have

made a deliberate decision not to present them as witnesses.  Gregory does not provide

support for his contention that counsel's failure to attempt to impeach Small's

identification was not part of a legitimate trial strategy, as counsel showed significant

efforts to challenge Small's identification in other ways throughout the trial.  *See*

*Strickland,* 466 U.S. at 689 ("[D]efendant must overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'")

(citation omitted).  Given counsel's vigorous cross-examination of Small and Detective

Amorese and reasonable decision to refrain from calling White and O'Garra in light of

their nonexculpatory and inconsistent testimony, Gregory has not demonstrated that

trial counsel "failed to provide meaningful representation" such that he is entitled to habeas relief on this ground. *Alvarez*, 125 N.E.3d at 120.

Accordingly, Gregory is not entitled to habeas relief on his ineffective assistance of counsel claim.

### C.   Fair Trial

Finally, Gregory argues that he was denied a fair trial because he was denied the opportunity to participate in the jury selection process, in violation of his Sixth Amendment rights. *See* Dkt. 14 at 30. He claims there was a due process violation where the court permitted jurors to effectively excuse themselves without making a judicial determination that they were unqualified to serve. *See id.* at 31. Respondent argues that the claim is procedurally barred because the Appellate Division rejected the claim on direct appeal and that the claim is without merit. *See* Dkt. 17-1 at 18.

On appeal, the Appellate Division concluded that Gregory's jury contention was unpreserved for appellate review and meritless. *See Gregory I*, 75 N.Y.S.3d at 894. Because the Appellate Division's decision constitutes a dismissal on state procedural grounds, Gregory's claim is procedurally barred from federal habeas review. *See Coleman*, 501 U.S. at 750; *Murden*, 498 F.3d at 191-92.

Gregory may overcome the procedural bar if he demonstrates either cause for the default and actual prejudice, or that a failure to consider his claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Gregory argues that the

23

procedural bar should not apply because the court committed a structural error that warrants a new trial, or alternatively that he was denied effective assistance of counsel. *See* Dkt. 14 at 32.  Yet the state court's decision was not contrary to, nor did it involve an unreasonable application of, federal law, *see* 28 U.S.C § 2254(d), and Gregory neither demonstrates actual prejudice nor asserts that failure to reverse the state court's determination would amount to a fundamental miscarriage of justice.

Even if Gregory's claim were not procedurally barred, it fails on the merits.  The Supreme Court has recognized that "[n]o hard-and-fast formula dictates the necessary depth or breadth of *voir dire*" and that jury selection "is particularly within the province of the trial judge."  *Skilling v. United States*, 561 U.S. 358, 386 (2010) (citation and internal quotation marks omitted); *see also Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981) ("[F]ederal judges have been accorded ample discretion in determining how best to conduct the *voir dire*.").  This discretion extends to a trial court's decision to dismiss prospective jurors who have indicated that they could not be impartial, and courts in this circuit have held that a habeas claim based on a *sua sponte* dismissal of prospective jurors during the *voir dire* process is meritless.  *See, e.g., Wynder v. Smith*, No. 09-cv-4541, 2011 WL 70556, at *10 n.3 (S.D.N.Y. Jan. 10, 2011) (finding that petitioner's claim challenging the court's *sua sponte* dismissal of 35 prospective jurors was meritless); *Mitchell v. Herbert*, No. 97-cv-5128, 1998 WL 186766, at *2-4 (S.D.N.Y. Apr. 20, 1998)

24

(holding, on habeas review, that the trial court acted within its discretion to identify

potential bias and dismiss prospective jurors *sua sponte*).

Contrary to Gregory's contention that his counsel was prevented from

questioning all of the prospective jurors about their fitness to serve, *see* Dkt. 14 at 31, the

record indicates that counsel for both parties and the court questioned the prospective

jurors extensively about their impartiality before the jurors were empaneled.  *See* Dkt.

15-2.  Accordingly, Gregory is not entitled to habeas relief on the basis that the district

court's exercise of its discretion during *voir dire* violated his right to a fair trial.

## CONCLUSION

Gregory has failed to show any basis for relief under 28 U.S.C. § 2254.

Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

appealability because Gregory has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify

that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated:     New York, New York
           August 8, 2023


                                                    DENNY CHIN
                                                    United States Circuit Judge
                                                    Sitting By Designation

25